UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BALD EAGLE,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD GRAY, in his individual capacity; and ANTHONY PADILLA, in his individual capacity,<br><br>Defendants.[1] | 5:25-CV-05043-KES<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Christopher Bald Eagle, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 while he was incarcerated at the Pennington County Jail. Dockets 1, 5. Since Bald Eagle filed his original complaint, he has been transferred to FMC Butner in Butner, North Carolina.[2] Bald Eagle also filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report. Dockets 6, 7.

---

[1] Bald Eagle filed a motion to correct the spelling of each defendant's name. Docket 4 at 1. The court grants Bald Eagle's motion to correct the spelling of defendants' names and will use the corrected spelling provided by Bald Eagle when referring to defendants.

[2] A search of the federal inmate register number Bald Eagle provides in his original complaint (Docket 1 at 1) on the Federal Bureau of Prisons inmate locator shows that Bald Eagle is currently located at FMC Butner. *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 16, 2025).

I.     **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court, may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Bald Eagle's certified prisoner trust account report shows an average monthly deposit of $0.00 and an average monthly balance of $0.00. Docket 7 at 1. Based on this information, the court grants Bald Eagle's motion for leave to proceed in forma pauperis (Docket 6) and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Bald Eagle must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Bald Eagle's institution. Bald Eagle remains responsible for the entire $350 filing fee as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background Alleged by Bald Eagle

Bald Eagle filed two complaints. Dockets 1, 5.[3] Bald Eagle brings claims against Richard Gray and Anthony Padilla in their individual capacities for

---

[3] Bald Eagle's first complaint is only one page in length and contains very few facts. *See* Docket 1. Bald Eagle later filed a more comprehensive complaint filed on the Civil Rights Complaint by a Prisoner form. Docket 5. The court liberally construes Bald Eagle's supplement as an attempt to create an amended complaint and will consider it as such. An amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2025). Going forward, however, if Bald Eagle wishes to submit an amended complaint, he will have to comply with the Federal Rules of Civil Procedure and this court's Civil Local Rules of Practice.

3

monetary damages and injunctive relief. Docket 5 at 2, 7. Above Gray and Padilla's names, Bald Eagle provides the description, "Defendants, Cell Block 4, Cells, 8, and 9[,]" which suggests that Gray and Padilla were fellow inmates of Bald Eagle's while he was located at the Pennington County Jail. Docket 1 at 1. But Bald Eagle later provides in his amended complaint that Gray and Padilla are employed at the Pennington County Jail. Docket 5 at 2. Liberally construing these allegations in the light most favorable to Bald Eagle, as is required at the screening stage, the court assumes for purposes of its analysis that Gray and Padilla are employed at the Pennington County Jail. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se complaints must be liberally construed); *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (the "initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff").

Bald Eagle generally alleges a "threat to safety" claim, and provides the following statement to describe how his constitutional or federal rights were violated: "Hate crimes Act, Indian Civil Rights. Treaty rights Human Rights." Docket 5 at 5. To describe how defendants violated his rights, Bald Eagle states: "Racial Slurs, Indian Hater. Violent gang member, Threaten to Kill me Loud so others can hear them. Its Elder Abuse calling me names[.]" *Id.* As a result of these threats, Bald Eagle alleges that he "was Attacked in F.C.I. Pekin, Illinoise by Indian gang member. [He] was raped by inmates, all on Federal Psychosis Dept. on record, and hold over in Colorado." *Id.* at 4 (spelling errors in original). Additionally, Bald Eagle claims that defendants "mentally hurt

[him]" and caused him "stress" and "anguish" that led to him having heart failure. *Id.* Bald Eagle also alleges that he has post-traumatic stress disorder as a result of defendants' conduct. *Id.* at 5. In his request for relief, Bald Eagle requests that charges be brought against defendants, as well as monetary damages for "100 grand a piece, each, or more[.]" *Id.* at 7.

### B.     Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter,* 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to

raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This court will now assess Bald Eagle's claims under 28 U.S.C. § 1915A.

    **C.**    **Legal Analysis**

        **1.**    **Claims Against Defendants for Monetary Relief**

            **a.**    **Eighth Amendment Claims**

Bald Eagle brings claims against Gray and Padilla under 42 U.S.C. § 1983, requesting monetary damages from defendants in their individual capacities. Docket 5 at 1, 2, 7. "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law,[4] caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). (emphasis in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

---

[4] Based on a liberal construction of Bald Eagle's complaint, the court assumes as true Bald Eagle's statement that Gray and Padilla are employed at the Pennington County Jail and therefore that they were acting under color of state law. Docket 5 at 2; *West v. Atkins*, 487 U.S. 42, 49 (1988) ("[S]tate employment is generally sufficient to render the defendant a state actor." (citation omitted)).

6

A plaintiff must demonstrate "a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)).

Liberally construing Bald Eagle's complaint, he alleges that the threats directed toward him, made "Loud so others can hear them[,]" resulted in his being attacked and raped while incarcerated in Illinois. Docket 5 at 4, 5. It is unclear from Bald Eagle's complaint, however, who made these statements. As stated earlier, Bald Eagle makes conflicting statements on whether Gray and Padilla were fellow inmates[5] or Pennington County Jail employees. *See* Docket 1 at 1; Docket 5 at 2. Depending on whether these statements were made by Gray and Padilla or other individuals, two separate analyses under the Eighth Amendment are necessary. This court will conduct both as part of its liberal construction of pro se complaints.

### i.   Assuming Threats Were Made by Gray and Padilla

If Gray and Padilla, as employees at the Pennington County Jail, made the statements alleged by Bald Eagle, the court understands Bald Eagle to be asserting an Eighth Amendment conditions of confinement claim.

To show that a prison official violated the Eighth Amendment, a prisoner must meet two requirements: "[f]irst, the deprivation alleged must be,

---

[5] If Gray and Padilla were actually inmates housed at the Pennington County Jail, and not employees there, § 1983 is not the appropriate vehicle for asserting claims against them. Private actors generally cannot be held liable under 28 U.S.C. § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008).

7

objectively, 'sufficiently serious[.]' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). The second, subjective, requirement provides that an inmate must "prove that the prison officials had a 'sufficiently culpable state of mind.' " *Id.*

The Eighth Circuit applied this two-step test in *Irving v. Dormire* when analyzing a prisoner's claims that prison officials had threatened him. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The court held that the second requirement was met when prison staff made death threats to the plaintiff and encouraged other inmates to harm him: "[v]iewing these allegations in the light most favorable to [plaintiff], no legitimate penological purpose could have been served by defendants' conduct, and their actions toward [plaintiff] demonstrated a state of mind that was not merely deliberately indifferent, but also sadistic and malicious." *Id.* at 445–46.

Generally, verbal threats do not rise to the level of constitutional violations under § 1983. *Martin*, 780 F.2d at 1338. The Eighth Circuit has made an exception to this general rule, however, finding that verbal threats do constitute sufficiently serious deprivations for purposes of the first requirement when "the state official engaged in a 'brutal' and 'wanton act of cruelty' even though no physical harm was suffered." *Irving*, 519 F.3d at 448 (quoting *Burton v. Livingston*, 791 F.2d 97, 99–100 (8th Cir. 1986)). In *Irving*, the prison official "made several threats to kill [plaintiff], to have him killed, or to have him beaten[,]" and encouraged other inmates to attack him. *Id.* at 449. The court concluded that these threats qualified for the exception to the general rule

8

regarding verbal threats: "[t]he repeated and credible threats against [plaintiff], if proved to be true, constituted brutal and wanton acts of cruelty that served no legitimate penological purpose and posed a substantial risk of serious harm to [plaintiff's] future health." *Id.* at 449–50.

Assuming that Gray and Padilla, as Pennington County Jail employees, were the individuals making the threats Bald Eagle describes in his complaint, Bald Eagle has stated a plausible Eighth Amendment conditions of confinement claim. Thus, his Eighth Amendment conditions of confinement claim against Gray and Padilla in their individual capacities for money damages survives 28 U.S.C. § 1915A screening.[6]

### ii. Assuming Threats Were Made by Other Individuals

Assuming Gray and Padilla were not the ones to make the threats Bald Eagle alleges in his complaint, the court interprets Bald Eagle to be alleging that Gray and Padilla's failure to intervene after the statements were made resulted in the assault Bald Eagle alleges he suffered in Illinois. Therefore, the court liberally construes Bald Eagle's complaint to be asserting an Eighth Amendment failure to protect claim.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (citation omitted). "It is not, however, every injury suffered by one

---

[6] This claim survives screening only to the extent that Gray and Padilla are state actors and were the speakers that Bald Eagle alleges made the threats described in his complaint.

prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To prevail on a failure to protect claim, a prisoner must demonstrate two things. First, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Spruce v. Sargent,* 149 F.3d 783, 785 (8th Cir. 1998). Second, an inmate must demonstrate that prison officials were deliberately indifferent to that risk. *Id.* Here, Bald Eagle's allegations that he was attacked and raped, taken as true at this stage of pleading, meet the first requirement.

"Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Id.* This second prong requires that "the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir. 2007). "This requisite state of mind is akin to recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates." *Id.*

The threats Bald Eagle references, including "Death Threats" and "Racial Slurs," are certainly concerning. Docket 5 at 4, 5. But Bald Eagle does not sufficiently allege that Gray and Padilla demonstrated a deliberate indifference to risk. Bald Eagle alleges that "violent gang members" made threats to Bald Eagle "loud so others could hear them[,]" but Bald Eagle alleges no facts that Gray and Padilla were amongst those that heard these threats. *Id.* at 5.

Additionally, Bald Eagle alleges that the events leading to this action occurred at the Pennington County Jail. *Id.* at 1. But the attack Bald Eagle alleges was caused by these threats and insults occurred in Illinois. *Id.* at 4–5. Even if Gray and Padilla were aware of the threats occurring at the Pennington County Jail, Bald Eagle provides no facts demonstrating that they were aware the threats could result in harm to Bald Eagle at another facility. Even if Gray and Padilla *should have* been aware that the threats made at the Pennington County Jail could result in harm to Bald Eagle at an out-of-state facility, "evidence that an official merely 'should have known' of an excessive risk of harm based on 'very obvious and blatant circumstances' does not meet the standard of deliberate indifference." *Spruce*, 149 F.3d at 786. Therefore, Bald Eagle's Eighth Amendment failure to protect claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Hate Crime Act Claims

Under the section of his complaint instructing the plaintiff to describe how his constitutional or federal rights have been violated, Bald Eagle cites the "Hate crimes Act," which was ostensibly violated due to the insults directed towards him based on his race and age. Docket 5 at 5. The federal Hate Crimes Act (HCA), codified at 18 U.S.C. § 249, punishes willful conduct which causes bodily injury based on a person's "actual or perceived race, color . . . actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability[.]" 18 U.S.C. § 249(a)(1)–(2). The HCA is a criminal statute. *Id.*

11

"It is well established that federal criminal statutes generally do not provide private rights of action." *Edwards v. Edwards*, 2023 WL 7305026, at *8 (D.S.D. Nov. 6, 2023) (citing *Firson v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003)). *See also Soto-Elliott v. Shipley*, 2025 WL 2531427, at *4 (D. Neb. Sept. 3, 2025) ("case law is clear that Plaintiff does not have a private cause of action under 18 U.S.C. § 249" (collecting cases)). Therefore, Bald Eagle's claim arising under the federal Hate Crime Act is dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.    Remaining Claims

Bald Eagle attempts to state claims under the Indian Civil Rights Act (ICRA) and for violations of "Treaty rights" and "Human Rights." Docket 5 at 5. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Bald Eagle's allegations regarding these claims are limited to the general legal conclusions referenced above. For instance, Bald Eagle does not state which provisions of ICRA were violated, or how his ICRA claim differs from any claims that might be asserted under the United States Constitution. Similarly, Bald Eagle does not state which treaty rights were violated, and a claim for a violation of "Human Rights[,]" by itself, is not a cognizable claim. Although pro se complaints must be liberally construed, *Erickson*, 551 U.S. at 94, "[j]udges are not like pigs, hunting for truffles buried [in the record]," *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (alterations in original) (quoting *Gross v. Cicero*, 619

F.3d 697, 702 (7th Cir. 2010)). Therefore, Bald Eagle's remaining claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.     Claims for Injunctive Relief

Bald Eagle also requests that charges be brought against Gray and Padilla. Docket 5 at 7. The court understands this as a request that Gray and Padilla be criminally prosecuted for the harm they allegedly caused Bald Eagle. "Whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's, not the court's, discretion." *Smith v. Powers*, 1998 WL 355818, at *1 (N.D. Cal. June 18, 1998) (prisoner § 1983 lawsuit requesting criminal charges against jailer dismissed on screening). *See also Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (holding that private citizens cannot compel enforcement of criminal law); *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

If "[a plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings." *Cragoe v. Maxwell*, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) (citation omitted). Therefore, Bald Eagle's request for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

### III. Conclusion

Thus, it is ORDERED:

1. That Bald Eagle's motion to correct defendants' names (Docket 4) is granted.

2. That Bald Eagle's motion for leave to proceed in forma pauperis (Docket 6) is granted.

3. That the Clerk of Court shall send a copy of this order to the appropriate financial official at Bald Eagle's institution.

4. That the institution having custody of Bald Eagle is directed that whenever the amount in Bald Eagle's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Bald Eagle's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

5. That Bald Eagle's Eighth Amendment conditions of confinement claim against Gray and Padilla in their individual capacities for money damages survives 28 U.S.C. § 1915A screening, but only to the extent that Gray and Padilla are state actors who made the threats Bald Eagle alleges in his complaint.

6. That Bald Eagle's remaining claims against Gray and Padilla are dismissed in part with prejudice and in part without prejudice for

failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That the Clerk shall send two blank summons forms and Marshal Service Forms (Form USM-285) to Bald Eagle so that he may cause the complaint to be served upon the defendants Gray and Padilla.

8. That Bald Eagle shall complete and send the Clerk of Courts summons and USM-285 forms for the defendants. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

9. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaints (Dockets 1, 5) and this order, upon the defendants.

10. That the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

11. That Bald Eagle will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending

Dated January 12, 2026.

        BY THE COURT:

        /s/ *Karen E. Schreier*
        KAREN E. SCHREIER
        UNITED STATES DISTRICT JUDGE